IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOHN C. CLOWER, KAY HENDRICKSON CLEVENGER, NANCY HENDRICKSON STALEY, and BILL HENDRICKSON, JR., Individually and on behalf of all other persons similarly situated (THE CLASS) Plaintiffs, | § § § § § § § § § § § § | CIVIL ACTION NO. 2:07-CV-510 (TJW) |
| v. | | |
| WELLS FARGO BANK, N.A., Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff's First Supplemental Motion for Class Certification (Docket Entry No. 31) and related briefing. Plaintiffs request that the Court certify and allow notice to be sent to a class of trust beneficiaries managed by Wells Fargo through their Wichita Falls, Corpus Christi and Waco trust offices. The Court held a hearing on this motion on October 21, 2008. After considering the parties' filings, oral arguments and the applicable case law, the Court ORDERS that the motion be GRANTED as discussed below.

I.  **Factual Background**

Plaintiffs John C. Clower and Kay Hendrickson Clevenger, sue on their own behalf and on behalf of a class of people similarly situated to the plaintiffs, who are either grantors or beneficiaries that have property interests in trusts presently administered by defendant Wells Fargo that were previously administered by First Mercantile Bank of Dallas in its own name or as MCorp, MBank, or MTrust, and thereafter in sequence and chain of title by Ameritrust, Texas Commerce, and Norwest.

1

Plaintiff John C. Clower ("Clower") is one of many beneficiaries of an irrevocable trust created by J.C. and Oneda Clower in a trust agreement dated May 23, 1969 ("the Clower Trust"). Similarly, plaintiffs Kay Hendrickson Clevenger, Nancy Hendrickson Staley, and Bill Hendrickson, Jr. (collectively, "the Hendricksons") are among the beneficiaries of two testamentary trusts, one established by Frank M. Wood by instrument dated November 23, 1966, and another established by Beatrice H. Wood by instruments dated October 27, 1972 and May 9, 1978 (collectively, the "Hendrickson Trusts"). The Clower and Hendrickson trust instruments and agreements named the First-Wichita National Bank of Wichita Falls, Wichita Falls, Texas ("FWNB") as trustee. In 1984, the First-Wichita National Bank and other Texas banks were acquired by the First Mercantile Bank of Dallas (MCorp). As a result, the administration of trusts previously managed by the First-Wichita National Bank and other similarly acquired Texas banks moved to MCorp. The detailed sequence and legality of the various transfers of the management of these trusts from MCorp to Wells Fargo is disputed by the parties. *See* Motion, p. 13-15; Response 3-5. However, it is agreed that Wells Fargo eventually came to manage these trusts and does so at this time.

Plaintiffs assert that Wells Fargo, not having been named as trustee in any of trust instruments and agreements at issue, is acting without authority. Wells Fargo asserts that the governing federal and state banking laws expressly allowed the trust powers in these trusts to pass to Wells Fargo through a common sequence of sales and acquisitions.

In their Supplemental Motion, Plaintiffs assert that a class should be certified to pursue claims of constructive fraud, conversion and trespass to title against Wells Fargo. In their motion, Plaintiffs seek to have the plaintiff class defined as follows:

> All persons who are beneficiaries with property interests in trusts presently administered by Defendant Wells Fargo that were previously administered by First Mercantile Bank of Dallas as MTrust, and then thereafter in sequence and chain of title by Ameritrust, Texas Commerce Bank, Norwest Bank and Wells Fargo Bank.

*See* Motion, at p. 16.

Plaintiffs contend that there are at least two hundred trusts at issue in this lawsuit and the vast majority of those trusts have multiple beneficiaries spread throughout Texas. Wells Fargo represents that it presently administers eighty five trusts that were previously administered by MBank, Wichita Falls. Of those eighty five trusts, thirty four are irrevocable trusts that were created by personal agreements, like the Clower Trust, and only forty seven are trusts that were created by wills, like the Hendrickson Trusts. According to Wells Fargo, the remaining trusts are charitable trusts, life insurance trusts, and revocable trusts.

Plaintiffs seek to certify the class and seek removal of Wells Fargo as the trustee of all of these trusts. Further, plaintiffs seek actual damages for trustee fees, commissions and other charges collected by Wells Fargo during its administration of these trusts.

**II.     Discussion**

To certify a class under Rule 23, plaintiffs must show that their proposed class meets all of the requirements of Rule 23(a) and the requirements of at least one of the subsections of Rule 23(b). *See* Fed. R. Civ. P. 23. Under Rule 23(a), the proposed class must be so numerous that joinder of all members is impracticable ("numerosity"); there must be questions of law or fact common to the proposed class ("commonality"); the claims or defenses of the representatives must be typical of those of the proposed class ("typicality"); and the representative parties must

3

fairly and adequately protect the interests of the proposed class ("adequacy"). Fed. R. Civ. P. 23(a); *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502 (5th Cir. 2004). In addition, because plaintiffs seek to certify the class under Rule 23(b)(3), they must also show that common issues predominate and that class treatment is the superior method to resolve the dispute. *See* Fed. R. Civ. 23(b)(3).

The class certification determination rests within the sound discretion of the trial court, exercised within the constraints of Rule 23. *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261, 264 (5th Cir. 2007). The party seeking certification bears the burden of establishing that all requirements of Rule 23 have been satisfied." *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005). Before granting certification, a court must conduct a rigorous analysis to determine whether the plaintiffs have met the Rule 23 requirements. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). "Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Castano*, 84 F.3d at 744. However, a district court cannot deny certification based on its belief that the plaintiff could not prevail on the merits. *Id.* (citing *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971)).

      **a.**    **Rule 23(a) Requirements**

      **1.**    **Numerosity**

To satisfy the numerosity requirement, the court must inquire whether the class is so numerous that joinder of all members is impracticable. *See Watson v. Shell Oil Co.*, 979 F.2d 1014, 1022 (5th Cir. 1992). In this case, defendants concede numerosity with regard to each of plaintiffs' alleged claims. Thus, plaintiffs have satisfied the numerosity requirement for all of

their claims and the Court need not analyze whether there are sufficient members under the proposed class definition.[1]

### 2. Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class. *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) (stating that the commonality requirement of Rule 23(a)(2) is aimed at "determining whether there is a need for combined treatment and a benefit to be derived therefrom"). The threshold for commonality is not high; it is met "where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). Moreover, the absent class members' interests need not be identical to meet the commonality requirement. *Johnson v. Am. Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir. 1978).

Plaintiffs argue that there are several common questions that would suffice to satisfy the commonality requirement. Specifically, the plaintiffs allege seven issues, the resolution of which would affect all members of the proposed class, including:

1. Whether defendant has authority to act as trustee of the trust instruments described in the complaint;
2. Whether defendant provided contractual steps, court proceedings, or other due process required to act as trustee of the trust instruments described in the complaint;
3. Whether there is a privity of contract between defendant and plaintiffs and members of the putative class;
4. Whether there is an ongoing trepass to title as to the trust instruments described in the complaint;
5. Whether the alleged conduct constitutes constructive fraud by a fiduciary;

---

[1] Nevertheless, the Court notes that this requirement would be easily satisfied given the representations made by Wells Fargo in their response. *Zeidman v. J. Ray McDermott Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (noting that "(t)he proper focus (under Rule 23(a)(1)) is not on numbers alone," and that classes with as few as twenty-five or thirty members have been certified by some courts).

6. Whether the putative class and plaintiffs herein are entitled to equitable relief against defendant; and

7. Whether plaintiff and the putative class are entitled to monetary damages, and if so, the measure of those damages.

*See* Motion, at p. 21.

On the above questions 1 and 2, defendants argue that plaintiffs erroneously presume that Wells Fargo was required to undertake some contractual steps or court proceedings. Further, they argue plaintiffs have made no attempt to show how questions 1 and 2 relate to their conversion claim, or how they would be answered in the same manner for all putative class members. The Court is of the opinion that these questions go to the basic elements of the plaintiffs' claims and when answered as to the plaintiffs, apply to all of the putative class members. Similarly, if Wells Fargo can demonstrate that it has satisfied contractual steps or undertaken court proceedings, or other due process requirements to act as trustee, this defense would be common to all class members who are beneficiaries of these trusts.

With regard to questions 3 through 7, defendants argue that these questions are too abstract and have no bearing on plaintiffs' claim of conversion or breach of fiduciary duty.[2] The Court disagrees. These questions are very relevant to the elements of both of these causes of action. For instance, the issue of whether Wells Fargo's conduct would constitute constructive fraud is an issue common to all the trust agreements and affects all members of the proposed class.

Between the three causes of actions pled by the plaintiffs and the seven issues listed by them in their motion to certify the class, the Court finds that there is "at least one issue whose

---

[2] In their original complaint filed November 20, 2007, plaintiffs alleged conversion and "no privity of contract/trespass to title" against the defendants. Subsequently, plaintiffs sought leave to amend their original

resolution will affect all or a significant number of the putative class members." *See Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)). Given the fact that the commonality requirement is not very demanding, plaintiffs in this case have satisfied this requirement.

### 3. Typicality

Under the typicality requirement, the named plaintiffs must demonstrate that there is sufficient "similarity between [their] legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997). Like commonality, the threshold for demonstrating typicality is low. *Id.* Typicality does not require identity of claims, but only that "the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dallas, Tex.*, 254 F.3d 551, 571 (5th Cir. 2001).

Plaintiffs here argue that their claims do arise out of the same course of conduct and are based on the same legal theories as those of the class members. With regard to each of the putative class members, they contend Wells Fargo does not have the requisite legal authority to act as a trustee to the trust instruments on which these class members are beneficiaries. They note that all of these subject trusts have come within Wells Fargo's management through a series of common transactions. Further, they contend that the possible defenses that Wells Fargo may raise with regard to each of these class members' claims are not so different as to become a

---

complaint and add a claim for constructive fraud by a fiduciary. (Docket No. 37). The Court granted leave allowing the plaintiffs to amend their complaint on October 3, 2008. (Docket No. 53).

7

significant focus of the litigation, thereby threatening to divert attention from the common concern of the plaintiff class.

In response, defendants list out a variety of differences in the present position of the plaintiffs and that of the purported class members. The differences among class members that defendants highlight include those cases where class members may only be future and contingent beneficiaries, or those class members whose agreements have provisions extending the fiduciary appointment to corporate successors, allowing removal of trustees at will or including no-contest requirements. They argue that trusts that originated in Corpus Christi and Waco are not the same as those that originated in Wichita Falls. Defendants argue that legal implications of these differences are significant and these differences misalign the plaintiffs' interests with these types of members in the class. Therefore, they argue that plaintiffs, in proving their case with regard to the causes of action pled, will not necessarily have proven the claims of the other class members. Further, they also point to the fact that the amount of damages recoverable by every class member may be different.

Plaintiffs respond that such differences are inconsequential. They point out that all members of the putative class have property interests in certain trusts that Wells Fargo is currently administering without any authority to do so. These class members, plaintiffs contend, have suffered the same legal injuries and possess the same interests as the plaintiffs. The Court finds that the plaintiffs' claims and the defenses potentially applicable to them are indeed typical of the class. The factual differences that Wells Fargo points to are not such that they would defeat the typicality requirement of Rule 23(a). *James*, 254 F.3d at 571; *see also Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002).

Here, it is the same course of conduct on the part of Wells Fargo that would give rise to claims for all members of the class. The legal theories on which the class members base their claims would indeed be the same. The court fails to see how it would matter whether the trust originated in Waco or Corpus Christi and are administered by different Wells Fargo trust offices. The test for typicality is not as demanding as the defendant makes it out to be by highlighting these differences. *Mullen*, 186 F.3d at 625. Furthermore, Rule 23(d)(2) provides for a notice to class members and an opportunity to opt-out in a class action certified under Rule 23(b)(3). A notice relating to opt-out opportunity would alert class members that there may exists subtle differences in their trust agreements and they should either avoid being a part of the class or pursue individual claims against Wells Fargo. Regardless, the Court finds that the typicality requirement is satisfied in the present case.

### 4. Adequacy of Representation

The adequacy of class representation required under Rule 23(a)(4) mandates an inquiry not only into (1) the "zeal and competence of the representatives' counsel," but also into (2) "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 481 (5th Cir. 2001).

Defendants do not find fault with the "zeal and competence of the representatives' counsel." However, they argue that plaintiffs may have potential conflicts with members of the proposed class given the differences of interests listed above. They argue that there may be class members who do not share plaintiffs' desire to remove Wells Fargo as their trustee, and this would be a disqualifying conflict. Further, they note that Clower is presently a party to another

similar lawsuit against Wells Fargo in the 89th Texas state District Court of Wichita County, Texas.[3] According to Wells Fargo, Clower could therefore have motives different from those of other class members and should be a representative of the class.

Plaintiffs contend they have no interests that are antagonistic to, or that conflict with, other class members. While they agree that some of the trusts at issue may have had additional trustee along way, they represent that all the trusts have a common sequence of succession of trustee companies leading up to Wells Fargo.

"Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (quoting *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999)). Although differences exists between plaintiffs in this case and the purported class members, these are not such that would create a conflict of interests for the plaintiffs. A majority of the putative class members in this case are trust beneficiaries just like the named plaintiffs in this case. With regard to Clower's state court action, the Court agrees with the plaintiffs. If Clower is asserting the same claims and defenses in state court as he is in the present case, the Court is not of the opinion that the state court action would create such a conflict of interest as to bar Clower from representing a class that has similar claims here. Plaintiffs' counsel represents to the Court that counsel has spent the last eighteen months investigating claims brought against

---

[3] Plaintiffs represent that John C. Clower is one of 16 Clower family member defendants in a state court case filed against them by Wells Fargo. The case is styled Wells Fargo Bank, N.A. v. Lawrence C. Clower, et al., Cause No. 161,100 in the 89th District Court of Wichita County, Texas. The lawsuit is a declaratory judgment case to modifiy past interpretations of trust agreement income distribution provisions. Clower has filed a counterclaim in that case seeking to establish that Wells Fargo is not the lawful trustee of the family trust. *See* Reply, p. 29.

10

Wells Fargo and that counsel has extensive experience in class action litigation.[4] The Court finds that the adequacy of representation requirement is met here.

### b. Rule 23(b)(3) Requirements

#### 1. Predominance

The predominance inquiry is "more demanding than the commonality requirement of Rule 23(a)" and requires courts "to consider how a trial on the merits would be conducted if a class were certified." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 525 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301-02 (5th Cir. 2003)). If the court determines that the issues before it would cause the proposed class to "'degenerat[e] into a series of individual trials,'" class certification is inappropriate. *Bell Atl.*, 339 F.3d at 302.

The Court has already addressed issues raised by Wells Fargo with regard to differences between the various types of trusts and trust beneficiaries that it claims would render class certification inappropriate in this case. With regard to predominance, Wells Fargo further argues that the damages claimed by each Class member may be different because the administration fees and other charges collected by Wells Fargo vary from trust to trust based on a number of individualized factors. Therefore, they argue individual issues will predominate making certification inappropriate. *See* Response, p. 24 (citing *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006)). Plaintiffs respond that Wells Fargo maintains sufficient documentation to easily calculate the amount of fees charged for administration of each trust. It is their contention that damages can easily be determined for each class member by a uniform method or formula. The Court agrees. This is not a case where each individual plaintiff has

---

[4] Counsel represents that his firm's attorneys have handled fifty three class actions and is presently involved in

suffered different intangible injuries that would result in a series of individual mini-trials on damages. *See Steering Comm*, 461 F.3d at 602. The damages sought by the plaintiffs are clearly known to Wells Fargo. Plaintiffs need not propose a complicated "mathematical or formulaic calculation" for the Court to determine these damages. *Cf. id*. In its discussion above, the Court has identified the substantive issues that will control the outcome and determined that these issues are common to the class. *O'Sullivan v. Countrywide Home Loans, Inc*., 319 F.3d 732, 738 (5th Cir. 2003). Of all the common issues, the predominant one before the Court is indeed the liability issue involving Wells Fargo's authority in administering these trusts. Common questions thus predominate over individual ones.

### 2. Superiority

Rule 23(b)(3) enumerates several factors pertinent to the superiority inquiry, including: (1) the interest of class members in pursuing their own claims; (2) the extent and nature of any other litigation concerning the controversy; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of the class action. *See* Fed. R. Civ. P. 23(b)(3).

With regard to the first factor, the interest of class members to control litigation individually, defendants argue that this is not a negative value suit; therefore, the court should deny class certification. *Castano*, 84 F.3d at 748. As evidence, Wells Fargo cites administrative fees in the amounts of $61,000 and $53,000 that it thus far has charged to the two lead plaintiffs in this case. It argues that that the expense and burden of individual litigation does not necessarily make it impossible or economically unfeasible for all of the members of the class

---

eighteen such cases, including several in federal district courts across the country. *See* Motion at 31.

individually to seek redress on the wrongful conduct alleged in the complaint. While these are significant amounts, they are not such that the Court would be compelled to "to allow individual trials to proceed, before [it] engages in the complicated predominance and superiority analysis necessary to certify a class." *Id*.

With regard to other litigation concerning the controversy at issue, the Court has already addressed the single state court suit that is ongoing at this time.[5] Since the positions taken by Clower in that case are consistent with the ones taken before this Court, the Court finds that the pendency of that suit does not weigh against the certification of a class in this case. As far as the Court is aware, there is no other litigation currently pending, which would impact the Court's decision on class certification.

On the desirability of concentrating the litigation of the claims in this particular forum, Wells Fargo argues that Marshall is not the proper venue for such litigation. The Court notes that neither of the parties has thus far contested jurisdiction of this Court or venue in Marshall, Texas. Further, having presided over this case for over a year, the Court is now familiar with the issues in this case and value of concentrating litigation in this forum is great. Accordingly, the third factor weighs in favor of finding a class action superior to other methods of adjudication.

The fourth factor addresses the difficulties likely to be encountered in the management of a class action, and Wells Fargo contends that this is the most troublesome aspect of this certification. Wells Fargo argues that the main problem that plaintiffs face in satisfying their burden to show both predominance and superiority is the "potential havoc" that would be

---

[5] Plaintiffs point out that Clower has sought to abate the state court case until class certification could be decided in this Court. However, Wells Fargo has opposed that motion, keeping that case actively pending along with the present case. *See* Reply, p. 29.

wreaked on hundreds of trusts if this Court provides relief to the class members by removing Wells Fargo as the trustee. Wells Fargo argues that in light of granting such a "drastic remedy," this Court would be forced, under Section 113.083 of the Texas Trust Code, to conduct individual hearings to select and appoint successor trustees for each of the trusts in the class. *See* Response, p. 25 (citing TEX. PROP. CODE ANN. § 113.083). Wells Fargo argues that this Court would need to review each individual trust agreement and property involved, making the administration of the proposed class action unmanageable. This, Wells Fargo contends, would cause the class to "degenerate into a series of individual trials," making class certification inappropriate. *Id*. (citing *Bell Atl*., 229 F.3d at 302). The Court's perspective of potential remedies in this case is very different than the scenario Wells Fargo paints.

Courts have generally held that "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 140-41 (2d Cir. 2001) (listing number of management tools available to a district court to address any individualized damages issues that might arise in a class action);[6] *Yaffe v. Powers*, 454 F.2d 1362, 1365 (1st Cir. 1972).

First, Plaintiffs point out that the remedy they seek from this action is simply an enabling method that can be used against Wells Fargo in state probate courts. The relief sought is to judicially foreclose Wells Fargo from opposing any petitions seeking its removal as a trustee by any class member in state probate courts. *See* Reply, p. 17; Plaintiff's First Amended Complaint,

14

p. 21. Plaintiffs contend that resolving this case on a class-wide basis involves nothing more than determining if Wells Fargo is a proper trustee to all of these trusts – in effect a ruling on the validity of transfer of these trusts to Wells Fargo, its legal authority and any breaches of duty thereafter.

Second, there are several opt-out and opt-in mechanisms that a Court can use in a class action suit. As discussed earlier, Rule 23(d)(2) provides for a notice to class members and an opportunity to opt-out in a class action certified under Rule 23(b)(3). In addition, the Fifth Circuit has approved the use of an opt-in mechanism during the remedies phase of the suit following the finding of liability. *Robinson v. Union Carbide Corp.*, 544 F.2d 1258, 1260-61 (5th Cir. 1977) (citing 3B MOORE'S FEDERAL PRACTICE P 23.55 at 23-1161 (1975)) ("It may be necessary to obtain some affirmative action before the final determination of appropriate relief."). If liability is determined in this case, the Court intends to provide notice to all class members who have not opted out to affirmatively opt-in to seek the remedy of replacing Wells Fargo as the trustee for their trust. *Cf. In re Visa Check*, 280 F.3d at 141 (suggesting as a possible management tool available to the district court, the option of decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages). With regard to opt-out options, Wells Fargo argues that in cases where a trust has multiple beneficiaries, there could be disagreements among beneficiaries on whether to opt-out or opt-in for this class. The Court notes that Wells Fargo has argued that a number of the trust agreements at issue have *in terrorem* or no-contest provisions that dictate which

---

[6] The Court notes that among the tools suggested by the Second Circuit is the option of "bifurcating liability and damage trials." *In re Visa Check*, 280 F.3d at 141; *accord Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir.1999). The Second Circuit also suggests appointing a magistrate judge or special master to preside

beneficiaries can or cannot seek to remove the trustee. More importantly, the Court fails to see how this situation would be different from any other situation where beneficiaries disagree on removal of trustee under the Texas Trust Code. *See* TEX. PROP. CODE ANN. § 115.001 (a) (Vernon Supp.2008) (stating that a district court has jurisdiction over all proceedings by or against a trustee); § 115.011 (Vernon 2007) (stating that an "interested person" may bring an action under section 115.001, but the only necessary parties to such an action are beneficiaries, persons receiving distributions from the trust, and the trustee, if the trustee is serving), § 111.004(7) (Vernon 2007 & Supp. 2008) (defining "interested person" as "a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust").

Furthermore, Wells Fargo represents that only eighty five trusts, that were previously administered by MBank Wichita Falls, are at issue in this case. Hence, this is not a "gigantic plaintiff class," with a "large number of defendants," that would pose serious concerns over the manageability of this suit. *Robinson v. Texas Auto. Dealers Ass'n*, 387 F.3d 416, 426 (5th Cir. 2004) (finding the district court erred in its superiority inquiry by failing to consider problems concerning the vast plaintiff class and the significantly large defendant group). Having carefully considered how a trial on the alleged causes of action would be tried, the Court does not believe, at this stage in the litigation, that concern over the potential complexity of remedies outweighs the advantages of maintaining this suit as a class action. *Stoffels v. SBC Communications, Inc.*, 238 F.R.D. 446, 458-59 (W.D. Tex. 2006) (noting that "relatively complex individual determinations are commonplace in the class action context").

---

over individual damages proceedings. *In re Visa Check*, 280 F.3d at 141. The Court notes that a magistrate judge is

### III. Conclusion

Based on an analysis of the applicable law, the Court is of the opinion that a class action, rather than innumerable individual actions, is the better method of litigating this dispute. Therefore, the Court determines that the motion for class certification should be GRANTED. Given the foregoing, the Court hereby ORDERS that plaintiffs' Motion for Class Certification of a class consisting of:

> All persons who are beneficiaries with property interests in trusts presently administered by Defendant Wells Fargo that were previously administered by First Mercantile Bank of Dallas as MTrust, and then thereafter in sequence and chain of title by Ameritrust, Texas Commerce Bank, Norwest Bank and Wells Fargo Bank

is GRANTED.

SIGNED this 30th day of March, 2009.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE

---

available in the Marshall Division to assist with any proceedings related to remedies.